Opinion issued May 6, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01236-CV




WILLIAM S. KILROY, JR., Appellant

V.

LORA JEAN KILROY AND LYNN ALICE RYAN KILROY, Appellee




On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 00-53567







NO. 01-03-01197-CV




IN RE WILLIAM S. KILROY, JR., Relator




Original Proceeding on Petition for Writ of Mandamus




O P I N I ON

          By interlocutory appeal and mandamus, William S. Kilroy, Jr. (“Billy”),
challenges the trial court’s order staying arbitration proceedings between him and his
ex-wife, Lynn Alice Ryan Kilroy (“Lynn”), pending the court’s determination of 
standing issues relating to Billy’s mother, Lora Jean Kilroy (“Jeanie”). We determine
(1) whether we have jurisdiction over the mandamus proceeding or the interlocutory
appeal and (2) whether the trial court abused its discretion in staying the arbitration
proceedings.
          We dismiss the interlocutory appeal for want of jurisdiction and conditionally
grant the petition for writ of mandamus. 
Facts & Procedural History
          Billy and Lynn were married on September 25, 1999. Shortly thereafter, Lynn
gave birth to a girl, L.C.K. On February 18, 2003, the couple divorced.
          Billy and Lynn’s final decree of divorce incorporated a mediated settlement
agreement, appointing Billy as L.C.K.’s sole managing conservator and providing
him the right to establish the primary residence of L.C.K. within Harris County, Texas
or contiguous counties. Lynn was appointed the child’s possessory conservator and
given visitation rights. The divorce decree further incorporated a rule 11 agreement,
as follows:
BILLY KILROY and LYNN KILROY have signed and agreed to the
terms and conditions set forth in the Rule 11 Agreement attached hereto
as Appendix 1, which is incorporated into this Final Decree of Divorce
as though set out herein verbatim and made a part hereof for all
purposes.

The rule 11 agreement provided that the parties would submit subsequent
controversies concerning L.C.K. to binding arbitration. The agreement also provided
that Bill Henderson, the mediator who facilitated the parties’ settlement agreement,
would serve as arbitrator.
          In September, 2003, Billy initiated arbitration proceedings, seeking (1) to
terminate Lynn’s visitation rights, pending the completion of a psychiatric assessment
and (2) to enforce or otherwise obtain the right to establish L.C.K.’s residence outside
of Texas. After the initial arbitration proceedings, the arbitrator determined that the
divorce decree prohibited Billy from relocating L.C.K. outside of Harris County or
those counties contiguous to Harris County. Therefore, on October 22, 2003, the
arbitrator ordered that L.C.K. was not to be removed from Harris County or
contiguous counties for the purpose of changing the child’s primary residence,
pending the completion of arbitration proceedings. The arbitrator further ordered that 
 
 
arbitration would reconvene on October 30, 2003, to address the issues of whether the
residency restriction should be lifted and whether Lynn’s visitation rights should be
terminated. 
          Before arbitration recommenced, however, Jeanie filed a suit affecting the
parent-child relationship (SAPCR) in the trial court, seeking custody of L.C.K. or, in
the alternative, a court order limiting Billy’s right to determine the primary residence
of the child within Houston, Harris County, Texas. Jeanie also filed an “Opposed
Motion to Order Abatement of Arbitration Proceedings,” asking the trial court to
abate the ongoing arbitration proceedings between Billy and Lynn and resume
jurisdiction of the matters involved therein. 
          On November 4, 2003, the trial court heard argument on Jeanie’s motion to
abate the arbitration proceedings. During the hearing, the trial court determined that
Jeanie’s standing to bring her SAPCR action was in question. Therefore, the court
stayed the arbitration proceedings and postponed consideration of Jeanie’s claims,
pending the court’s determination as to Jeanie’s standing. More specifically, the trial
court held as follows:
The Court, from argument of counsel, finds that there is going to be a
serious challenge to standing in this case. The Court is not going to rule
on whether or not the case will be referred to arbitration or not and will
stay any further proceedings until the parties have amended, if they are
going to. And the Court will give a reasonable amount of time to amend
challenging standing.

 
The Court wants to determine the issue of standing to see how
many parties there are in this case before it’s going to rule any further
on the arbitration.
 
. . . . 
 
So I don’t want any more arbitration going on until the Court
determines who the parties are to this case.

Jurisdiction
          As an initial concern, we must address the issue of our jurisdiction over this
matter before we can reach the merits of the parties’ arguments. See Davis v. Covert,
983 S.W.2d 301, 302 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d w.o.j.). 
Appellate courts must determine, even sua sponte, the question of jurisdiction, and
the lack of jurisdiction may not be ignored simply because the parties do not raise the
issue. See McCauley v. Consol. Underwriters, 304 S.W.2d 265, 266 (Tex. 1957);
Davis, 983 S.W.2d at 302. When an appellate court concludes it does not have
jurisdiction, it can only dismiss the appeal. Bethurum v. Holland, 771 S.W.2d 719,
722 (Tex. App.—Amarillo 1989, no writ).
A.      The Appeal
          The legislature determines, by statute, whether a particular type of pretrial
ruling may be appealed before a final judgment is rendered. Appellate courts have
jurisdiction to consider immediate appeals of interlocutory orders only if a statute
explicitly provides appellate jurisdiction. Stary v. DeBord, 967 S.W.2d 352, 352-53
(Tex. 1998); Eichelberger v. Hayton, 814 S.W.2d 179, 182 (Tex. App.—Houston [1st
Dist.] 1991, writ denied). A statute authorizing an appeal from an interlocutory order
is in derogation of the general rule that only final judgments are appealable; therefore,
Texas courts strictly construe those statutes authorizing interlocutory appeals. Walker
Sand, Inc. v. Baytown Asphalt Materials, Ltd., 95 S.W.3d 511, 514 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).
          In Texas, the legislature has authorized an interlocutory appeal of an order
granting an application to stay arbitration made under Civil Practice and Remedies
Code section 171.023. See Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (Vernon
Supp. 2004). Section 171.023 provides, in pertinent part, as follows:
(a) A court may stay an arbitration commenced or threatened on
application and a showing that there is not an agreement to arbitrate.

Tex. Civ. Prac. & Rem. Code Ann. § 171.023(a) (Vernon Supp. 2004).

          In the instant case, the trial court acknowledged on the record that there was
a binding arbitration agreement governing the dispute between Billy and Lynn. Thus,
the order staying arbitration proceedings was not rendered pursuant to section
171.023. Strictly construing section 171.098—as we must—we conclude that the
court’s order staying arbitration, pending the resolution of Jeanie’s standing, was not
an appealable, interlocutory order. 
          We hold that this Court lacks jurisdiction to consider Billy’s appeal.
 
 
B.      The Petition for Writ of Mandamus
          Although we have no jurisdiction to hear Billy’s appeal, we may nonetheless
consider his petition for writ of mandamus. 
          Mandamus is an extraordinary remedy and is available only in limited
circumstances of manifest and urgent necessity. See Holloway v. Fifth Court of
Appeals, 767 S.W.2d 680, 684 (Tex. 1989) (orig. proceeding). Thus, a writ of
mandamus issues only to correct a clear abuse of discretion or the violation of a duty
imposed by law when there is no other adequate remedy at law. Johnson v. Fourth
Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). A trial court abuses its
discretion only when its decision is so arbitrary and unreasonable that the decision
amounts to a clear and prejudicial error of law. Cent. Nat’l Ins. Co. Of Omaha v.
Lerner, 856 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1993, orig.
proceeding). Interference through the issuance of a writ of mandamus is justified
“when parties stand to lose their substantial rights.” Walker v. Packer, 827 S.W.2d
833, 842 (Tex. 1992) (orig. proceeding) (quoting Iley v. Hughes, 311 S.W.2d 648,
652 (Tex. 1958)(orig. proceeding)).
          We have held above that the trial court’s order staying arbitration was not an
appealable, interlocutory order. Furthermore, because the trial court’s order requires
the parties to litigate the issue of Jeanie’s standing before presumably resuming
arbitration, Billy and Lynn will have been “deprived of the benefits of the arbitration
clause . . ., and the purpose of providing a rapid, inexpensive alternative to traditional
litigation would be defeated.” See In re MHI P’ship, Ltd., 7 S.W.3d 918, 921 (Tex.
App.—Houston [1st Dist.] 1999, orig. proceeding) (citing Jack B. Anglin Co. v.
Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992)). Thus, provided the trial court
committed a clear abuse of discretion in rendering the order, mandamus will lie. See
id. 
Applicable Law
          Before addressing the substantive issues raised by Billy’s petition for
mandamus, we must determine the law applicable to the instant controversy. The
parties agree that the rule 11 agreement provides for Texas arbitration law to apply
to Billy and Lynn’s arbitration proceedings. However, Billy contends that the Texas
General Arbitration Act (“TGAA”) applies to the instant controversy, while Jeanie 
contends that Family Code section 153.0071


 governs. The existing dispute
concerning the law governing the agreement requires us to interpret the agreement to
determine the intent of the parties. 
          Whether an arbitration agreement imposes a duty to arbitrate the claims in a
particular dispute and the law by which the parties agreed to be governed pursuant
to the agreement is a matter of contract interpretation. Jabri v. Qaddura, 108 S.W.3d
404, 410 (Tex. App.—Fort Worth 2003, no pet.) (pertaining to scope of agreement);
Henry v. Gonzalez, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism’d
by agr.) (pertaining to questions of governing law). If there is no ambiguity in the
contract, the construction of the written instrument is a question of law for the court. 
City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). 
Whether a contract is ambiguous is a question of law as well. Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). Thus,
if the contract is worded such that it may be given a certain or definite legal
interpretation, then it is not ambiguous and the court will construe the contract as a
matter of law. Nat’l Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 520 (Tex.
1995).
          Our primary goal in construing a written contract is to ascertain and give effect
to the intent of the parties as expressed in the instrument. Jabri, 108 S.W.3d at 411. 
In construing the arbitration agreement, we are to examine all parts of the document
and the circumstances surrounding the formulation of the contract. Id. We must
consider all of the provisions with reference to the entire arbitration agreement; no
single provision will be controlling. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). During our analysis, we remain cognizant that there is a strong presumption
in Texas public policy favoring arbitration. Houston Lighting & Power Co. v. City
of San Antonio, 896 S.W.2d 366, 371-72 (Tex. App.—Houston [1st Dist.] 1995, writ
dism’d w.o.j.).
          In the instant case, the pertinent provisions of the rule 11 agreement provide
as follows:   
 
1.The parties stipulate and agree that they are desirous of resolving
all legally permissible post civil divorce and children issues by
binding arbitration, as opposed to court litigation, specificallyparent/child relationship issues that BILLY and LYNN could
litigate, absent this agreement.
 
2.Upon execution of this Rule 11 Agreement by BILLY and his
respective attorneys, LYNN, Pro Se, the attorney ad litem and the
arbitrator desired by BILLY and LYNN, Bill Henderson, BILLY
and LYNN covenant, agree, and stipulate that each of them waive
the right to revoke any agreements made in this document, and
accept all agreements contained in this document as being
irrevocable as of the date and time of execution. The parties
acknowledge that Henderson is to serve pursuant to the Texas
Civil Practice and Remedies Code, Section 154.052 and sections
6.601 and 153.0071 of the Texas Family Code.

          Billy contends that the agreement should be construed broadly, making the
TGAA governing. On the other hand, Jeanie asserts that paragraph two of the
contract limits the applicable law to Family Code section 153.0071. 
 
 
          After considering all the provisions with reference to the entire arbitration
agreement, we conclude that the first paragraph of the rule 11 agreement expresses
the intent of the parties in regard to the scope of the agreement. This paragraph calls
for binding arbitration of all legally permissible post-civil divorce and children issues.
Thus, the arbitration agreement is (1) a written agreement (2) to resolve all legally
permissible future controversies (3) by binding arbitration. This is the sort of
arbitration agreement which falls under the TGAA. See In re Cartwright, 104 S.W.3d
706, 712 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). 
          There is no indication that the parties intended for the second paragraph to limit
the law applicable to the arbitration agreement. Instead, the second paragraph simply
establishes (1) that Mr. Henderson is to act as arbitrator and (2) the authority of Mr. 
Henderson (a) to generally act as an arbitrator for the parties (Civil Practice and
Remedies Code, section 154.052), (b) to arbitrate the parties’ divorce matters (Family 
Code, section 6.601), and (c) to arbitrate the parties’ SAPCR matters (Family Code,
section 153.0071).
          Furthermore, the fact that the agreement pertains to SAPCR controversies does
not otherwise make the TGAA inapplicable. See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.002 (Vernon Supp. 2004). Civil Practice and Remedies Code, section 171.002
lists those matters excepted from the TGAA; SAPCR matters are conspicuously
missing from the list. See id. Therefore, we determine that the legislature meant for
arbitration agreements in SAPCR controversies to be governable by the TGAA. See
Cartwright, 104 S.W.3d at 712. 
          However, that the TGAA governs the arbitration agreement at issue does not
necessarily mean the Family Code’s provisions providing for arbitration of SAPCR
matters do not also govern the agreement. See Stieren v. McBroom, 103 S.W.3d 602,
605 (Tex. App.—San Antonio 2003, pet. denied). There is no existing authority
indicating that the TGAA and family code arbitration provisions are meant to be
mutually exclusive. Indeed, in matters such as the one at bar, it is helpful to consider
both provisions in concert, recognizing that, where the two authorities conflict, the
specificity of the family code provisions require us to apply them over the more
general TGAA provisions. See Tex. Gov’t Code Ann. § 311.026 (Vernon 1998).
          Thus, we conclude that both the TGAA and Family Code section 153.0071
govern the arbitration agreement at issue.
Stay of Arbitration Proceedings
          Billy asserts that mandamus is appropriate because the trial court’s stay of the
arbitration proceedings between him and Lynn was a clear abuse of discretion, as
Jeanie’s standing was an issue to be determined by the arbitrator. Conversely, Jeanie
argues that Family Code subsection 153.0071(a) provided the trial court with the
discretion to either hear the issue of Jeanie’s standing or submit it to the arbitrator. 
Jeanie further argues that subsection 153.0071(a) also provided the court with the
discretion to hear Billy and Lynn’s underlying controversies; therefore, they should
have petitioned the trial court before proceeding to arbitration in order to enable the
court to determine whether the controversy was appropriate for arbitration. Thus,
Jeanie concludes, the trial court did not err in staying the arbitration proceedings so
that it could determine Jeanie’s standing.
          Arbitration is a creature of contract; thus, when a party seeks to compel
arbitration, he must first establish his right to that remedy under contract. Pepe Int’l
Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 931 (Tex. App.—Houston [1st Dist.]
1996, no writ). Because only Billy and Lynn were parties to the rule 11 agreement,
Jeanie was not bound by the arbitration clause therein and could bring her SAPCR
suit in the trial court. See id. (citing Prudential-Bache Sec., Inc. v. Garza, 848 S.W.2d
803, 806-07 (Tex. App.—Corpus Christi 1993, orig. proceeding)). Similarly, Jeanie
had no right to intervene in the arbitration proceedings between Billy and Lynn, as
she was not a party to the rule 11 agreement. See id. Therefore, the trial court was
not required to submit either the issue of Jeanie’s standing or Jeanie’s SAPCR action,
itself, to the arbitrator. Indeed, the trial court lacked the discretion to submit any of
the issues raised by Jeanie to binding arbitration, absent agreement of all the parties
involved. See id. 
 
 
          We disagree with Billy’s contention that the trial court was required to submit
the issue of Jeanie’s standing to arbitration because her claims required reliance on
the terms of the divorce decree. Billy predicates his argument on a line of cases
holding that a nonparty to an arbitration agreement can be bound to arbitrate when
the nature of the claim requires her to rely on the terms of the written agreement
containing the arbitration provision. See ANCO Ins. Servs. of Houston, Inc. v.
Romero, 27 S.W.3d 1, 4 (Tex. App.—San Antonio 2000, pet denied); Valero Energy
Corp. v. Teco Pipeline Co., 2 S.W.3d 576, 591-93 (Tex. App.—Houston [14th Dist.]
1999, no pet.); Carlin v. 3V Inc., 928 S.W.2d 291, 296-97 (Tex. App.—Houston [14th
Dist.] 1996, no writ); Merrill Lynch, Pierce, Fenner & Smith v. Eddings, 838 S.W.2d
874, 878-79 (Tex. App.—Waco 1992, writ denied). However, in the instant case, the
party resisting arbitration was not relying on the terms of the written agreement
containing the arbitration provision in asserting her claims. Jeanie based her claims
on Family Code sections 153.432, 102.003(9) and 102.004. If Jeanie proved that she
was entitled to relief under any one of these authorities, she was entitled to such
relief, regardless of the divorce decree or rule 11 agreement. Thus, Jeanie’s trial court
proceedings were separate and distinct from Billy and Lynn’s arbitration proceedings. 
          Because Jeanie was properly before the trial court attempting to litigate the
identical issues that Billy and Lynn were arbitrating, however, does not necessarily 
 
mean that the trial court had the discretion to stay the arbitration proceedings,
pending resolution of some or all of the issues before the court. 
          On application of a party that shows a valid agreement to arbitrate, the trial
court must allow the parties to the arbitration agreement to proceed with arbitration. 
See Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (Vernon Supp. 2004); Pub
Brewing Co., 915 S.W.2d at 929. Once a trial court determines that a valid agreement
to arbitrate exists and that the claim raised falls within the scope of that agreement,
it has no discretion but to submit the claims to arbitration. Pub Brewing Co., 915
S.W.2d at 929. Furthermore, the presence in litigation of parties not privy to an
arbitration agreement does not defeat the right of a party to such agreement to have
its claims arbitrated. See id. at 931; Vireo, P.L.L.C. v. Cates, 953 S.W.2d 489, 501
(Tex. App.—Austin 1997, pet. denied) (Jones, J., dissenting). Thus, we conclude that
the trial court lacked the discretion to stay Billy and Lynn’s arbitration proceedings,
pending resolution of the issue of Jeanie’s standing. 
          Although there is a dearth of authority addressing this specific issue under the
TGAA, our conclusion follows similar decisions under the Federal Arbitration Act
(FAA).


 For instance, in Moses H. Cone Memorial Hospital v. Mercury
Construction, the United States Supreme Court opined:
Under the [FAA] an arbitration agreement must be enforced
notwithstanding the presence of other persons who are parties to the
underlying dispute but not to the arbitration agreement.
. . . . 
In some cases, of course, it may be advisable to stay litigation among the
non-arbitrating parties pending the outcome of the arbitration. That
decision is one left to the district court (or to the state trial court under
applicable state procedural rules) as a matter of its discretion to control
its docket.

Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 20 & n.23, 103
S.Ct. 927, 939 & n.23 (1983). 
          Similarly, in Tai Ping Ins. Co. v. M/V Warschau, the Fifth Circuit Court of
Appeals held that the trial court lacked discretion to stay arbitration of indemnity and
contribution issues between joint tortfeasors, pending a determination of liability by
the trial court hearing the underlying claim. Tai Ping Ins. Co. v. M/V Warschau, 731
F.2d 1141, 1145 (5th Cir. 1984). In doing so, the court stated,
While [appellee] asserts that permitting the claim for indemnity to go
forward in arbitration will produce ‘duplication of effort, redundant testimony, and the possibility of inconsistent findings,’ we think that
these are the risks that parties to an arbitration clause must be considered
to have contemplated at the time they struck their bargain. 
Tai Ping, 731 F.2d at 1145. 
          We find these cases persuasive. 
          Furthermore, we disagree with Jeanie’s contention that, because this case
involves a SAPCR action, the trial court necessarily had the discretion to stay the
arbitration proceedings between Billy and Lynn. Although we recognize both the
unique nature of SAPCR actions and the importance of ensuring that a court of
continuing, exclusive jurisdiction has ultimate discretion as to whether any action
taken in regard to a child is in the best interest of that child, it does not follow, a
priori, that a trial court may disregard an agreement to arbitrate by forcing parties to
litigate their SAPCR controversies. Nor does it follow, in the instant case, that the
trial court may interfere with arbitration proceedings in an effort to provide itself time
to unravel issues peculiar to litigation brought by a nonparty to the arbitration
agreement. 
          We further disagree with Jeanie’s contention that, in SAPCR cases, parties to
an arbitration agreement must petition the trial court and seek a referral before
proceeding to arbitration. Jeanie’s contention is predicated on language in Family
Code subsection 153.0071(a) stating that “on written agreement of the parties, the
court may refer a suit affecting the parent-child relationship to arbitration.” Tex.
Fam. Code Ann. § 153.0071(a) (emphasis added). Jeanie argues that, by using the
word “may” instead of the word “shall,” the legislature expressed its intent that
arbitrable controversies first pass through the trial court before proceeding to
arbitration. 
          Although this Court has not previously endeavored to interpret the language
cited by Jeanie, at least one appellate court has interpreted the identical language—as
used in Family Code subsection 153.0071(c)


—not to require parties to seek judicial
permission before proceeding with mediation in SAPCR cases. See In re J.A.W.-N.,
94 S.W.3d 119, 121 (Tex. App.—Corpus Christi 2002, orig. proceeding). In J.A.W.-N., the court reasoned as follows:
Nothing in section 153.0071(c) requires, nor should be construed to
require, a written request or a written order of referral based on the
request of the parties or the court’s own motion as a prerequisite to
parties agreeing to mediate their differences and reducing that agreement
to writing. Such a requirement would have a chilling effect on the
mediation process. Moreover, appellant has directed us to no authority
and we find none, that precludes parties from agreeing to mediate
without involving the court in making that decision.

Id. We find this rationale both persuasive and applicable to subsection 153.0071(a)’s
language regarding arbitration proceedings.
          In the instant case, the rule 11 agreement did not require the parties to first
petition the trial court before initiating arbitration proceedings. Absent such a
contractual agreement, neither the TGAA nor Family Code subsection 153.0071(a)
required Billy and Lynn to make such a petition. See J.A.W.-N., 94 S.W.3d at 121;
see also, Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-171.098 (Vernon 1997 & 
 
 
Supp. 2004). Thus, Billy and Lynn were not required to first petition the trial court
or seek a referral by the court before initiating arbitration proceedings under the rule
11 agreement.
          We are cognizant of Jeanie’s concern that our decision today will allow parents
to circumvent the trial court’s continuing and exclusive authority to determine the
“best interest” of the child. However, this concern should be allayed by the
requirement, in SAPCR matters, that the trial court determine, at a non-jury hearing,
that an arbitrator’s award is in the best interest of the child before enforcing the
award. See Tex. Fam. Code Ann. § 153.0071(b). This requirement gives parties the
freedom to resolve controversies involving children without the expense and time of
litigation, while at the same time preserving the ability of the court to ensure that the
best interests of the child are protected.
          Because Billy and Lynn properly initiated arbitration proceedings regarding the
issues of Lynn’s visitation and the residency restriction, and because the trial court
lacked discretion to stay those proceedings, we hold that the trial court committed 
a clear abuse of discretion in staying the arbitration proceedings between Billy and
Lynn, pending its decision concerning Jeanie’s standing.
 
 
 
Conclusion
          We dismiss Billy’s appeal for want of jurisdiction. However, we conditionally
grant the writ of mandamus and direct the trial court to lift the stay of the arbitration
proceedings. Writ will issue only if the trial court fails to do so.
          We lift the stay granted in our December 17, 2003 order. All other pending
motions are denied as moot.




                                                   Laura Carter Higley
                                                   Justice
 
Panel consists of Justices Taft, Hanks, and Higley.